The third case for argument is 24-2017 from the District of Minnesota, Montez Lee, Jr. v. United States. Kelly, if we're not ready. Good morning, and may it please the Court. Thank you for your time and attention. My name is Keira Kelly. I represent Mr. Montez Lee, Jr. This case presents a question of statutory interpretation to be reviewed de novo that is the subject of a circuit split on which this Court has yet to take a position. The majority of circuits find, in applying 28 U.S.C. 2255-F1 to situations where an initial judgment is later amended to add restitution, that judgment becomes final so as to begin the one-year limitation for filing a habeas petition only after that amendment. And while the issue in this case is narrow, the consequences of its resolution are significant, both for my client and his two young children and for all parties and courts in this circuit who would benefit from the Court adopting the fair and clear position of the majority circuits. I have one main point to present today, that 2255-F1, the point of finality, begins when the defendant can no longer seek direct review of the sentence. In cases such as this, where initially restitution is left open and when no appeals are taken, a defendant can no longer seek direct review of that whole sentence 14 days after the judgment is amended to add deferred restitution. This is a question not of when the matter being challenged in a postconviction motion is introduced, but rather a question of when that sentence is set in stone from the district court's perspective. Put another way, the entire conviction and sentence, the custodial as well as the fines and restitution, can all be appealed following a — following an amendment adding restitution. And therefore, the judgment is not final until after the lapse of the period during which that appeal could have been taken. So you're saying that after the amended judgment is filed, adding the restitution, that the defendant can appeal everything at that point? Yes, Your Honor. Has our court said that yet? We have a couple of cases, both from the Supreme Court, other circuits, and the Eighth Circuit, that either directly support or infer that position. And we can start with Jimenez v. Quarterman, which is briefed extensively on page 10 of the reply brief, that a judgment is final for postconviction purposes when it can no longer be appealed. And when an event reopens a period of direct appeal, the lapse of that new window of appealability or the conclusion of that direct review restarts the one-year limitation for postconviction relief. And Jimenez was a case where a 2254, a State — a petitioner in State custody filed a habeas after the conclusion of the State allowing an out-of-time direct appeal. So something happened that reopened that window of direct appealability that allowed for this 2255F1, or in this case the State corollary provision, to extend the postconviction period of appeal. Another case that supports this position is Corey v. United States, which is briefed on — The Jimenez — I'm behind you, a case, you can tell. The Jimenez case is a Supreme Court case, correct? Yes, Your Honor. Okay. Proceed. Proceed with your argument. So Corey v. United States tells us that an amendment to the sentence reopens the window to appeal the entirety of the sentence. And the Eighth Circuit has addressed in the negative the very specific question of whether an amendment that adds or alters restitution opens the window to appeal the entire sentence. We can look at United States v. Johnson, and that was a case that was cited in — it's in the appendix, the joint appendix on page 91, footnote 2, page 8 of the government's brief at the trial court level. However, that — the government's brief misconstrued the holding of that case. What United States v. Johnson, which is an Eighth Circuit case from 2005, what that court tells us is by the negative inference of the dismissal of an appeal as untimely because it was filed after a supplement to the sentencing judgment that did not change the restitution, the inference here is that if the judgment had been supplemented in a way where it wasn't just a supplement, it was an amendment and restitution was changed, that window of appealability would have reopened. But this Court need not rely — or however you pronounce it. Boy, it's our closest case, isn't it? I think that DIAB supports — supports our position because it deals with a ministerial change, first and foremost, and you could do what the district court — It amended the restitution, though, right? It changed the names and addresses. Right. So that was — that was found to be more of a ministerial correction and not changing the amount of money that was owed or the existence or amount or even the parties themselves. It was a change to their — it was a correction, a modification such as, like, the analogy I think used in the DIAB case was a criminal rule 36 correction to a typographical error, that these are ministerial corrections that don't change the defendant's substantive amount of restitution owed or to whom that party was owed. I think also a distinction with DIAB is that that case was — was exploring newness in the context of this — the prohibition on second or successive 2255s as opposed to a situation where we're saying when was the judgment final for — for the purpose of filing your first one. But this does bring up a tension because when you have a — a reading that says it's a very hard bar to get a new — a new sentence for the purpose of 2255, and then also a very hard bar in terms of finality is that first judgment, there's a lot of substantive proceedings and changes that could happen to that judgment that you can't challenge if you're required to file that petition one year after the finalization of that first judgment. So DIAB — DIAB applies the second or successive standard, but it is a standard we — this Court could choose to adopt also for the — for the purpose of finality. And it — I think it really illustrates the point that we're not here dealing with ministerial corrections, that my client, his sentence was amended to add an entirely new element to his sentence. And we — we briefed extensively on the fact — and the government has conceded that restitution is a part of the sentence. And so the amended judgment just replaced the original one. Correct, Your Honor. Correct. Just amended judgment, and the first one has no more effect. Correct. And to revisit your question as well, there is further support for this — this idea that an amended judgment adding restitution reopens the window for direct repeal of the entire sentence, including the conviction and the custodial sentence. And the Eighth Circuit, as I said, addressed that in the negative inference. But all of the circuits that have addressed this issue squarely and affirmatively does a amendment adding restitution reopen the window to file a direct repeal of the entirety of the sentence? And the Second, Ninth, Tenth, and Eleventh Circuits, which those opinions are in a string slate on pages two and three of the reply brief, all find that when you amend the sentence to add restitution, that entire sentence can be timely appealed. So holding these cases together with Jimenez, Corey, and Johnson, it's clear that the one-year time limitation begins when that judgment is set in stone, when it can no longer be appealed. And since adding deferred restitution reopens this window of appealability, the adding of restitution constitutes the 14-day period when that can no longer be appealed. That constitutes finality for the purposes of 2255F1. Now, appellant anticipated that the government in this appeal would echo the government's position in Anthony, that restitution is not a component of the sentence. However, the government conceded this point. We can look to U.S. v. Brown, Eighth Circuit case from 2019. The sentence is the judgment. Restitution is part of the sentence. The — there's no — in the AEDPA context, the Supreme Court clearly holds that a defendant's judgment of conviction is not final until both the conviction and the sentence become final. You're into your rebuttal time, so you know. You can use it now if you desire. If you have no further questions, I'd reserve the remainder of my time for rebuttal. You certainly may. Thank you. Ms. Buzicki. May it please the Court. My name is Kate Buzicki. I represent the United States on this matter. As my colleague stated, this is a matter of interpreting a statute. And the statute here that the Court must interpret is 3582B. When a judgment includes a sentence to incarceration, it constitutes a final judgment for all other purposes. And certainly, filing a post-conviction collateral attack on that sentence is encompassed by the phrase, for all other purposes. I thought 2255F1 was the key statute. It is, Your Honor. But the way this case has progressed, the question has become, what makes a final judgment for the purposes of filing a direct appeal? Because that's — that statute and then the statute that Your Honor just referenced, 2251, deal with those dates so closely that what the Court needs to look to is when does the statute — when does the sentence become final for the purposes of pursuing a direct appeal? And the restitution is part of the sentence, correct? Yes, Your Honor. Restitution is part of the sentence, although it is a unique part of the sentence that is separate from any other component of a criminal sentence. Yeah. Term of supervised release is part of the sentence. It's unique. It's not custodial. That's correct, Your Honor. But only the restitution portion of the sentence has given rise to the kinds of case law that is before the Court today, Manrique, Dolan, and all the other cases where the Supreme Court has recognized the very special purpose of restitution. And if I could just interrupt there. And I recognize that. I think that the case law is sort of — there's a dual purpose, even if we would say. But the fact that it has a purpose for making victims whole doesn't — I guess that's my question — that doesn't take away from the fact that it's part of the sentence of a criminal defendant who's going through court. Would that be fair, even if there's another purpose? Certainly, Your Honor, it is part of the sentence. And if I understand the point Your Honor is driving towards, Manrique really answers the issue here. There are two judgments. And as a matter of law, that first judgment, which issues after the sentencing hearing and may or may not contain the restitution that is part of the sentence, is the operable judgment for the purposes of filing a post-conviction collateral attack on the sentence. This Court has recognized as much in cases like Never Misses a Shot, Anjulo Lopez, and English, when it said that because a defendant did not appeal 14 days after the sentencing judgment issued, his sentence became final. His judgment became final on that date. What the defense proposes in this case is a change, a wholesale change to the way this Court has traditionally and very practically calculated those deadlines. Counsel, let's talk about the Diab case. Yes, Your Honor. As I am seeing this case, it's going to turn on whether we agree with the government's reading of Diab or the other reading. Now, as I understand the government's argument, you're saying that only plenary resentencing can create a judgment that restarts the statute of limitations clock. And the other argument is that instead, Diab dealt with technical and nonsubstantive amendments and said that they don't constitute new judgments. Why is your interpretation correct? Your Honor, the government's framework for Diab is the most practicable and the most consistent approach that district courts have to make on a routine basis for this type of motion. So what Diab seems to do is set up a framework where on one side you have a plenary resentencing, where there's no objection or dispute about whether a defendant who is subject to a plenary resentencing can pursue a new appeal and a new post-collateral attack or post-conviction attack. In the other group, we have a variety of changes to a sentence that do not generate a new opportunity to challenge the sentence under 2255. And all of the names of those changes sound like similes, but they're very precise and they have different purposes. So, for example, we have a modification to a sentence. We know that the Supreme Court in Dillon has said that a modification to a sentence, for example, if the sentencing commission changes the guidelines and makes it retroactive, that does not generate a new opportunity for a post-conviction challenge. Now, as this Court knows, a modification to a sentence can reduce months or even years off of a prisoner's time in prison. That is a significant and material change to a sentence, but it has no effect on the opportunity for a post-conviction collateral attack. We also have corrections under Rule 35 and Rule 36 with different timelines and slightly different purposes. This Court has said that those corrections do not generate a new opportunity for a post-conviction collateral attack. And then what DIAB said in a slightly different circumstance from what we have here because it was a second or successive context, but what DIAB said is that an amendment dealing with restitution is most similar to a modification and a correction. And should be placed in that group and not in the plenary resentencing group. I will also note, because my colleague stated that it was only a ministerial change in DIAB, in fact, it's a little more complicated than that. In DIAB, what happened was co-defendants were made jointly and severally liable for restitution. Now, joint and several liability can have a material effect on the actual amount a defendant has to pay in his restitution because there's another contributor who can also be pursued for that restitution. So while there were some ministerial changes, such as addresses, there was also the joint and several change. In any effect, this Court in a couple of cases has talked about whether a change, an amendment, is significant or dramatic or drastic. We urge this Court to really follow the framework of DIAB and group amendments that add restitution or change the amount of restitution with the modification and the correction that the Court set out in DIAB. But isn't, if you don't, I mean, everybody knew restitution just was still out there. It's not even imposed at all. And so we're all, everybody's waiting, they're going to submit the dollar amount and then the district court's going to issue an amended judgment. Why isn't that just fundamentally different? Because it is actually deciding a portion of the sentence. And it's not modifying anything. It's actually saying this portion of the sentence has just not been imposed yet. Your Honor, the government would again return to Manrique in that scenario. The Supreme Court has spoken loud and clear that the issuance of that first judgment following the sentencing hearing is a final judgment. Well, but that's a direct appeal, right? So here, and I'm sorry I interrupted you, but in the 2255 definition, is it F1? There's a judgment of conviction. So we're just talking about one. And when you're talking about a direct appeal, you can appeal a judgment, you can appeal an appealable order. And that's a little different than the statutory language we have in 2255 that's just talking about one judgment of conviction. Isn't that a material difference? Your Honor, we would disagree with that respectfully. And one of the things I'd point the Court to is what can actually be challenged in the context of a 2251 or 2255? Certainly restitution cannot. In this circuit? In this circuit. That's correct, Your Honor. Yes. So that would mean that we would be relying on a reason on the basic of the same statute. And again, I realize I'm interrupting you. But I don't know that that convinces me one way or the other because it's not what can you argue. The question is, is it a final judgment of conviction? And there I would go back to the need to create a standard that's operable and functional for the district court. So in this situation, what we would create if we adopt the rule urged by my colleague is that certain class of defendants, only those whose restitution is payable under the MVRA, would have an opportunity to continually appeal and continually seek relief under 2255, and that any other defendant, defendants in, for example, narcotics cases who typically don't have restitution obligations, defendants whose restitution is payable under a different statute or a framework, they would not have that opportunity. Well, they would. The first, the folks with the restitution, it's clear you agree that he could have appealed that amended judgment. He could have appealed the restitution amount. Yes, Your Honor. That's just sort of baked into the nature of the case, isn't it? It's like that's the way it goes. He's got another aspect of his sentence, and he gets to appeal that. And I think nobody's questioning that here. Yes. It's not the question of whether they can appeal the restitution amount. It's the way that the MVRA and the Supreme Court has acknowledged in Jolin allows victims to present new losses later on down the line. And so that basically defeats the finality of a judgment. It could be, as the Supreme Court said in Jolin, years or months afterwards to present new losses, and then that clock restarts for just one class of defendants. And that is not workable or equitable for all the other types of cases that appear in federal criminal court. So for that reason, it's also a question of what can district courts administer and what is operable. The same logic applies to the question of whether these changes to the sentence are dramatic or material. The best and most logical application of the statute is that if a defendant does not appeal, his judgment becomes final 14 days later. And we ask this Court to affirm the judgment of the district court. I see my time is up. Thank you. Thank you very much. Ms. Kilway. Just a few brief points on rebuttal. First and foremost, the risk of defendants using this to manipulate the system does not exist. It is not the defendant who controls under the Mandatory Victims Restitution Act when a victim discovers new losses. So a defendant is not the defendant who controls under the Mandatory Victims   So a defendant cannot rely on that and has to take the initiative to file a habeas petition promptly or else risk losing that forever because they don't know and can't control when a victim might come forth with new losses. Second, just to address the Campa-Fabala and the never misses a shot cases cited in the government's brief, these actually comport with the idea that it is the conclusion of the direct review or the availability of direct review, which implicates finality. In never misses a shot, there was a collateral review pending. And in Campa-Fabala, there was a pending petition to the Supreme Court for a rehearing. Neither of those are an open period of direct review or a period from which direct review could be taken. And we just note that while restitution in the Eighth Circuit, like many circuits, cannot be collaterally attacked because it's noncustodial with the postconviction motion, even the Ninth Circuit agrees that an amended judgment adding restitution provides a window for a defendant to appeal the entire sentence. The Ninth Circuit only reaches its minority position because of this habeas can't attack restitution, but it is the final custodial portion of the sentence which an amended judgment implicates and which triggers 2255F1. This is not a question of when the issue being challenged arose. It is when the district court has dealt with the case. Thank you. Thank you for your argument. The case number 24-2017 is submitted for decision by the Court. Ms. Laska, is that the final case for today? Yes, Your Honor. The Court will stand in recess until 9 tomorrow morning.